SWANSON & MCNAMARA LLP
Edward W. Swanson (SBN 159859)
ed@smllp.com
Britt Evangelist (SBN 260457)
britt@smllp.com
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
(415) 447-3800 / FAX (415) 477-9010

*Attorneys for Defendant Paul R. Wassgren*

KLINEDINST PC
Heather L. Rosing (SBN 183986)
hrosing@klinedinstlaw.com
Daniel S. Agle (SBN 251090)
dagle@klinedinstlaw.com
Amara S. Barbara (SBN 323332)
abarbara@klinedinstlaw.com
501 West Broadway, Suite 600
San Diego, California 92101
(619) 239-8131/ FAX (619) 238-8707

WILLIAMS & CONNOLLY LLP
John K. Villa (pro hac vice application
forthcoming)
jvilla@wc.com
Vidya Atre Mirmira (pro hac vice application
forthcoming)
vmirmira@wc.com
Joseph Bayerl (SBN 330085)
jbayerl@wc.com
(202) 434-5000 / FAX (202) 434-5029

*Attorneys for Defendant DLA Piper LLP (US)*

JENNER & BLOCK LLP
Michael McNamara (SBN 106079)
MMcNamara@jenner.com
Effiong Dampha (SBN 323554)
EDampha@jenner.com
515 South Flower Street Suite 3300
Los Angeles, CA 90071
(213) 239-5100 / FAX (213) 239-5199

*Attorneys for Defendant Fox Rothschild LLP*

1

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOSEPH ARMIJO, | Case No. |
| Plaintiff, | **JOINT NOTICE OF REMOVAL** |
| v. | **JURY TRIAL DEMANDED** |
| PAUL R. WASSGREN, DLA PIPER LLP (US), FOX ROTHSCHILD LLP, and DOES 1 through 50, inclusive | |
| Defendants. | |

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................7

**BACKGROUND** ..............................................................................11

**THIS REMOVAL IS PROCEDURALLY PROPER** .........................................12

**THE COURT HAS FEDERAL QUESTION JURISDICTION** ........................13

NOTICE OF REMOVAL                                    CASE NO.

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>CASES</u>**

*C.W. Howe Partners Inc. v. Mooradian*
   *43 Cal. App. 5th 688, 700 (2019)*..................................................................... 17

*Empire Healthchoice Assur., Inc. v. McVeigh*
   *547 U.S. 677, 700 (2006)*............................................................................... 18

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*
   *545 U.S. 546, 552 (2005)*............................................................................... 14

*Friedlander v. Troutman, Sanders, Lockerman & Ashmore*
   *788 F.2d 1500, 1504 (11th Cir. 1986)*........................................................... 19

*Giacometti v. Aulla, LLC*
   *187 Cal. App. 4th 1133, 1137 (2010)*............................................................ 16

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*
   *545 U.S. 308, 312 (2005)*........................................................... 13, 14, 15, 19

*Gunn v. Minton*
   *568 U.S. 251, 257 (2013)*.......................................................................... 13, 14

*Handy Land & Timber, LLLP v. Transcon. Gas Pipe Line Co.*
   *LLC, 762 F. App'x 810, 813 (11th Cir. 2019)*............................................... 19

*In re HealthSouth Corp. Sec. Litig.*
   *572 F.3d 854, 862 (11th Cir. 2009)*............................................................... 18

*LimitNone, LLC*
   *551 F.3d 572, 576–77 (7th Cir. 2008)*............................................................. 7

*Mikulski v. Centerior Energy Corp.*
   *501 F.3d 555, 570 (6th Cir. 2007)*................................................................. 18

*Mosier v. Stonefield Josephson, Inc.*
   *2013 WL 4859635, at *3 (C.D. Cal. July 30, 2013)*....................................... 17

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*
   *770 F.3d 1010, 1024 (2d Cir. 2014)*.............................................................. 19

*Nazzaro v. Balber*
   *2005 WL 1251785, at *5 (S.D.N.Y. May 25, 2005)*...................................... 15

*New York City Health & Hosps. Corp. v. WellCare of New York, Inc.*
   *769 F. Supp. 2d 250, 259 (S.D.N.Y. 2011)*.................................................. 16

*Proctor v. Vishay Intertechnology Inc.*
   *584 F.3d 1208, 1225 (9th Cir. 2009)*............................................................ 12

*Pub. Employees' Retirement Sys. of Miss. v. Stanley*
   *605 F. Supp. 2d 1073, 1074 (C.D. Cal. 2009)*................................................ 7

4

*Quicken Mortgage Corp. v. Bank of America, N.A.*
    2022 WL 189816, at *8 (Cal. Ct. App. Jan. 21, 2022) ................................... 17

*Reserve Management Co., Inc. v. Willkie Farr & Gallagher LLP* ................................. 15, 16, 19

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
    442 F.3d 741, 746 n.6 (9th Cir. 2006) ............................................................. 9

*Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*
    893 F.2d 1109, 1116 (9th Cir. 1990) ........................................................ 10, 18

*Rivet v. Regions Bank of La.*
    522 U.S. 470, 475 (1998) ................................................................................ 13

*SEC v. Brian Davison*
    Case No. 8:20-cv-325-MSS-MRM (M.D. Fla.) .............................................. 7

*SEC v. Robert Joseph Armijo*
    Case No.: 3:21-cv-01107-TWR-AHG ............................................................ 9

*Turbeville v. Fin. Indus. Regul. Auth.*
    874 F.3d 1268, 1276 (11th Cir. 2017) .......................................................... 17

*Wiand v. Family Tree Estate Planning, LLC*
    Case No.: 8:21-cv-00361-SDM-AAS ............................................................ 9

*Wullschleger v. Royal Canin U.S.A., Inc.*
    953 F.3d 519, 522 (8th Cir. 2020) ................................................................ 19

## **STATUTES**

*17 C.F.R. § 229.510* ................................................................................................ 18

*28 U.S.C. § 1331* .............................................................................................. 7, 13

*28 U.S.C. § 1367* ................................................................................................... 19

*28 U.S.C. § 1367(a)* .............................................................................................. 19

*28 U.S.C. § 1367(c)* .............................................................................................. 19

*28 U.S.C. § 1441* ..................................................................................................... 7

*28 U.S.C. § 1441(a)* .............................................................................................. 13

*28 U.S.C. § 1446* ..................................................................................................... 7

*28 U.S.C. § 1446(b)(1)* ......................................................................................... 12

*28 U.S.C. § 1446(b)(2)(A)* .................................................................................... 12

*28 U.S.C. § 1446(d)* .............................................................................................. 12

*28 U.S.C. § 84(c)(2)* ............................................................................................. 12

5

*28 U.S.C. §1441(a)* .............................................................................................. *12*

**OTHER AUTHORITIES**

*545 U.S. at 312* ..................................................................................................... *19*

*Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act of 1933* .................... *16*

*Securities Act of 1933* .................................................................................... *9, 17, 18*

*Securities Exchange Act of 1934* ......................................................................... *9, 17*

**REGULATIONS**

*Regulation D of the Securities Act of 1933* ............................................................. *12*

6

Defendants Paul R. Wassgren, DLA Piper LLP (US) ("DLA"), and Fox Rothschild LLP ("Fox"), (collectively "Defendants"), by undersigned counsel, hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, from the Superior Court of the State of California in and for the County of Los Angeles, to the United States District Court for the Central District of California, Western Division.  Removal is proper based on the original subject-matter jurisdiction of this Court under 28 U.S.C. § 1331 (federal question).

In a motion that will be filed shortly after this notice, Defendants seek transfer of this matter to the United States District Court for the Middle District of Florida for further proceedings (including consideration of any motion for remand).[1]  For more than two years, the Middle District has overseen an SEC-initiated receivership and extensive ongoing litigation involving the same subject matter, parties, and factual and legal issues presented here.  *See SEC v. Brian Davison*, Case No. 8:20-cv-325-MSS-MRM (M.D. Fla.).  Thus, the Middle District of Florida is uniquely knowledgeable about the centrality of federal securities law issues to Plaintiff's claims.  This case presents the classic circumstance where the motion to transfer should be granted before consideration of any potential motion to remand, so that the transferee court can apply its knowledge and experience when considering any jurisdictional issues.  In fact, case law contemplates just such a result.[2]

## PRELIMINARY STATEMENT

Plaintiff Robert Joseph Armijo's complaint turns on interpretation of federal securities laws and whether he violated them.  It also requires a court to decide whether federal law permits him to seek, and recover, indemnification for his own

---

[1] We attach a copy of the planned memorandum in support of the transfer motion as Exhibit E, which we will promptly file upon satisfaction of the meet and confer obligation required by C.D. Cal. Local Rule 7-3.

[2] *E.g.*, *Pub. Employees' Retirement Sys. of Miss. v. Stanley*, 605 F. Supp. 2d 1073, 1074 (C.D. Cal. 2009) (observing "[t]his Court need not address the propriety of removal before ruling on the motion to transfer" because transfer "is simply 'a determination that the merits should be adjudicated elsewhere'" (quoting *In re LimitNone, LLC*, 551 F.3d 572, 576–77 (7th Cir. 2008)).

violations of those federal laws. The core factual and legal issues, and indeed Armijo's claims here, are already pending in the Middle District of Florida (styled as claims against the EquiAlt Receivership Entities). It is difficult to imagine a case more dependent upon and infused with issues of federal securities law, federal receivership matters, and pending federal proceedings than this case.

In February 2020, District Judge Mary S. Scriven of the Middle District of Florida unsealed an SEC enforcement action against EquiAlt, LLC ("EquiAlt") and its principals, Brian Davison and Barry Rybicki, alleging EquiAlt operated as a Ponzi scheme and sold securities in violation of federal securities laws. One such violation involved the payment of transaction-based compensation (or "commissions") to non-brokers, like Armijo, who marketed and sold EquiAlt securities to their clients. Armijo's allegations against Defendants in this case arise from the same facts and circumstances at issue in the SEC enforcement action.

Armijo, a long-time licensed investment advisor, now describes himself as a victim, alleging that on the advice of EquiAlt and Defendants, EquiAlt's lawyers, he unwittingly violated federal securities laws for years, including years before having any contact whatsoever with Defendants, by selling unregistered securities to his clients and pocketing millions in commissions. According to Armijo, his reliance on Defendants' alleged erroneous advice exposed him to multiple federal investigations and lawsuits in federal courts, including claims by a federal equity receiver, and caused him to lose his business. These allegations are fanciful. Armijo's own complaint alleges that he violated federal securities laws by selling EquiAlt securities years before ever he interacted with Defendants. Defendants were not Armijo's attorneys, and Wassgren only spoke to Armijo twice over the many years Armijo was involved with EquiAlt (and after many of the investments were made). The Receiver's claims against Armijo are pending in the Middle District of Florida where the Receivership was filed. Armijo's instant complaint is a

8

transparent attempt to have Defendants bail him out and interfere with the Receivership.

Armijo is now a defendant in at least two pending cases in federal courts relating to his sales of EquiAlt securities.[3]  *First*, Burton Wiand, the Receiver for EquiAlt appointed by Judge Scriven, filed a lawsuit in the Middle District of Florida against Armijo, his firm Joseph Financial Inc., and a number of other non-brokers involved with EquiAlt securities, *Wiand v. Family Tree Estate Planning, LLC*, Case No.: 8:21-cv-00361-SDM-AAS, to recover the commissions that EquiAlt paid these non-brokers for their sales of securities.  The Receiver has filed a motion for summary judgment against Armijo that is pending.  Dkt. 142.

*Second*, the SEC launched an enforcement action against Armijo in the United States District Court for the Southern District of California, *SEC v. Robert Joseph Armijo*, Case No.: 3:21-cv-01107-TWR-AHG, in which it alleges that Armijo violated various provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 by selling EquiAlt securities for commissions without the required licensure.  *See* Ex. B.  Armijo has defended against the SEC's allegations by arguing, among other things, that 1) the SEC failed to state a claim for which relief can be granted; 2) he did not knowingly or recklessly violate the securities laws; 3) application of the federal securities laws to him are unconstitutional; and, most pertinently here, 4) *he acted in reliance on the advice of EquiAlt's lawyers, the instant Defendants*.  *See* Ex. C at affirmative defenses.[4]

Facing the prospect of multiple seven-figure judgments against him in federal court, Armijo seeks to turn EquiAlt's former lawyers into his indemnitors.  On

---

[3] In addition, until recently, Armijo was a defendant in another lawsuit in the Middle District of Florida, *O'Neal v. Joseph Financial, Inc.*, Case No.: 8:22-cv-00939-MSS-JSS, in which his former clients sued him for securities fraud arising out of the sale of EquiAlt securities.

[4] The Court may take judicial notice of and consider the court filings cited herein or attached as exhibits hereto.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and parties' briefs in another court).

NOTICE OF REMOVAL                                           CASE NO.

October 6, 2022, Armijo filed a complaint in the Superior Court of the State of California in and for the County of Los Angeles, alleging that legal advice he received from Defendants caused him to violate the federal securities laws, which in turn caused him damages.  Defendants were served on November 7, 2022.

Although Armijo couches his claims against Defendants in state law, his claims depend on federal issues that a court will need to decide, including whether Armijo violated federal securities laws, whether Defendants' alleged advice regarding the federal securities laws was incorrect, and whether the claims belong to the federal Receiver appointed by Judge Scriven.  Further, through this action Armijo, in substance, seeks indemnification for any federal judgment against him in the pending federal actions brought by the SEC and EquiAlt's Receiver—even though long-standing SEC policy and federal law prohibit indemnification for violations of federal securities laws.  *See, e.g., Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1116 (9th Cir. 1990).  Finally, in the pending SEC enforcement action against Armijo, he has attempted to raise as a defense the supposed advice of counsel, which appears also to be the core of his claims here.

Armijo's complaint, though artfully drafted to appear to be a state law matter, inevitably reveals its reliance on federal law:

> As a result of Defendants' clients' scheme and Plaintiff's justifiable reliance on Defendants' false representations and grossly-deficient advice, Plaintiffs – like Defendants' clients – became a target of actions by the SEC and Defendants' clients' investors and court-appointed receiver, all due to Plaintiff's unwitting participation in Defendants' clients' fraudulent scheme.  Plaintiff did so only because of Plaintiff's justifiable reliance on Defendants' false representations and grossly-deficient advice.

*See* Ex. A (Compl. ¶ 10).  *See also id.* ¶¶ 6–8, 30–32, 37, 41–43, 45–47, 54–61, 69– 73, 78–85, 97–99, 103–06, 112–15, 119, 122, 126–27.  These federal issues give rise to original jurisdiction over Armijo's case in federal court.  And, for the reasons provided in Defendants' upcoming motion for transfer, the Middle District of Florida can most efficiently adjudicate these federal law issues.

## **BACKGROUND**

Armijo, a licensed investment advisor representative since 2012, alleges that he was "recruited to sell EquiAlt Securities with the assistance and assurance of Wassgren." Ex. A (Compl. ¶¶ 12, 62).[5]  This is an astonishing allegation to make in a court pleading, as Armijo admits that he first began selling EquiAlt securities in 2013 in partnership with Dale Tenhulzen, another non-broker, without ever having spoken directly to Wassgren or any other lawyers at Fox or DLA. *Id.* ¶ 63.

In January 2016, after Armijo's partnership with Tenhulzen ended, Armijo alleges he approached EquiAlt's Barry Rybicki and asked whether he could start selling EquiAlt securities independently. *Id.* ¶ 66.  Armijo alleges he informed Rybicki that he held a Series 65 license (required to be an investment advisor) but did not have a Series 7 license (required to be a broker). *Id.*  According to Armijo, Rybicki responded that Wassgren previously told him that a Series 7 license was not required to sell EquiAlt securities in exchange for commissions. *Id.*  Armijo further alleges that Rybicki invited him "to contact Wassgren directly to discuss any questions Armijo had" about EquiAlt. *Id.*

Armijo concedes he waited well over a year, until July 2017, to call Wassgren to discuss his licensure. *Id.* ¶ 70.  Armijo alleges that during that conversation, Wassgren confirmed that a Series 65 was sufficient to sell EquiAlt securities in exchange for commissions. *Id.*  Wassgren disputes this account.

Armijo alleges that he corresponded with Rybicki again in the fall of 2017 and spring of 2019 about his licensure, and each time Rybicki reassured him that a Series 65 was sufficient to sell EquiAlt securities in exchange for a commission. *Id.* ¶¶ 75, 77.  In May 2019, Armijo alleges he had his second telephone call with Wassgren, during which Wassgren supposedly reaffirmed his previous advice about Armijo's sale of EquiAlt securities.  Again, Wassgren disputes this account.

---

[5] In this "Background" section, Defendants repeat the factual allegations in Armijo's complaint only for purposes of this removal.  Defendants do not concede the veracity of these allegations and reserve all rights to contest these allegations.

Armijo now contends that Wassgren allegedly provided him negligent legal advice about the federal securities laws during their calls and indirectly through the advice Wassgren provided to Rybicki. *Id.* ¶ 80. Armijo asserts that Wassgren should have explained that: 1) securities regulators, like the SEC, could find that Armijo lacked the necessary license to sell EquiAlt securities in exchange for commissions; 2) the SEC might determine that EquiAlt's securities did not qualify for a "Reg D exemption" (a reference to Regulation D of the Securities Act of 1933) from registration with the SEC and thus could be illegal for Armijo to sell; and 3) "the legal difference between a finder, broker-dealer and registered representative in reference to the sale of securities." *Id.* Armijo further asserts that Wassgren's conduct was a substantial factor in causing the pending SEC enforcement action and lawsuits by the Receiver and his former clients. *Id.* ¶ 85. Armijo seeks to recover, among other things, the costs of defending against the aforementioned actions and any judgments Armijo is ordered to pay in those actions. *Id.* at Prayer for Relief.

## **THIS REMOVAL IS PROCEDURALLY PROPER**

This action was filed on October 6, 2022, in the Superior Court of the State of California in and for the County of Los Angeles, bearing Case No. 22STCV32793. Defendants were served on November 7, 2022. Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1).

Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a) because the Superior Court of the State of California in and for the County of Los Angeles is located within the Central District of California, Western Division.

All Defendants consent to the removal of this action. *See* 28 U.S.C. § 1446(b)(2)(A); *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) (holding that § 1446(b)(2)(A) is satisfied where removing defendant avers that other defendants consent to removal).

Pursuant to 28 U.S.C. § 1446(d), Defendants are serving a copy of this Notice of Removal upon all other parties to this case, and Defendants are filing a copy with

the Clerk of the Superior Court of the State of California in and for the County of Los Angeles.

By filing a Notice of Removal in this matter, Defendants do not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Defendants specifically reserve their rights to assert any defenses and/or objections to which they may be entitled.  In addition, DLA, and Wassgren to the extent that Armijo pursues Wassgren in his capacity as a former DLA partner, preserve the right to invoke the mandatory arbitration clause in DLA's engagement letter with EquiAlt in the event any court determines that Armijo was an intended beneficiary of the DLA-EquiAlt attorney-client relationship.

Defendants reserve the right to amend or supplement this Notice of Removal.

## THE COURT HAS FEDERAL QUESTION JURISDICTION

A defendant may remove an action to federal court when that court has original jurisdiction over the action.  28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Whether a case "arises under" federal law is to be determined based on whether "a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998).  A complaint can plead a claim arising under federal law in two ways.  First, when "federal law creates the cause of action asserted" in the complaint.  *Gunn v. Minton*, 568 U.S. 251, 257 (2013).  Second, when a plaintiff pleads only state law claims, but those claims "implicate significant federal issues."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  This removal is based on the latter.

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."

NOTICE OF REMOVAL                                      CASE NO.

*Gunn*, 568 U.S. at 258.  If one of Armijo's state-law claims falls within the jurisdiction of a federal court, then removal is proper and the court may exercise supplemental jurisdiction over his other claims.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Armijo's claims for professional negligence, negligent misrepresentation, aiding and abetting fraud, and equitable indemnity implicate significant federal issues because they require Armijo to prove that Defendants provided him with incompetent legal advice in connection with the federal securities laws and that this advice caused the damages he now seeks to recover.  Moreover, these claims, which are nothing more than Armijo's bid for indemnity for his alleged violations of the federal securities laws, Compl. at Prayer for Relief, implicate long-standing SEC policy and federal law prohibiting such indemnification.  Those issues should be heard and decided in a federal forum.

The United States Supreme Court's decision in *Grable* is analogous.  There, the IRS seized property from the plaintiff to satisfy a tax delinquency; a few years later, the plaintiff filed a state law quiet title action against an innocent party who had purchased the seized property from the IRS.  In the quiet title action, the plaintiff challenged whether the IRS had complied with federal notice requirements.  545 U.S. at 310–11.  The Court held that this challenge to the IRS's actions gave rise to federal subject-matter jurisdiction, explaining that "[t]he meaning of a federal tax provision is an important issue of federal law that sensibly belongs in federal court" and that the federal government "has direct interest in the availability of a federal forum to vindicate its own administrative actions."  *Id.* at 315.

Similarly, here, Armijo became the subject of an SEC enforcement action related to his alleged violations of federal securities laws.  Compl. ¶ 85.  As detailed further below, SEC policy and federal law both provide that Armijo may not be indemnified for those violations of the federal securities laws.  Yet, by bringing the instant suit, Armijo now effectively seeks to have a state court address and evaluate:

NOTICE OF REMOVAL                                               CASE NO.

1) the SEC's interpretation and application of the federal securities laws, and 2) the SEC's policy and related federal law prohibiting him from recouping penalties and disgorgement paid to the SEC from third parties.

Courts faced with similar attempts at circumventing SEC policy and federal law against indemnification have held that such cases may be removed to federal court. For example, in *Reserve Management Co., Inc. v. Willkie Farr & Gallagher LLP*, the plaintiff, an investment advisor to a money market fund, sued the defendant law firm in New York state court for legal malpractice, alleging that the defendant provided the plaintiff with "incompetent legal advice" that led the plaintiff "to become the subject of [a still pending] SEC enforcement action" for violating "various provisions of the federal securities laws" and related class actions by private parties. 2012 WL 4378058, at *1–2 (S.D.N.Y. Sept. 25, 2012). The defendant removed the case on the ground that plaintiff's malpractice claim presented "substantial federal question[s]" under federal securities laws, and plaintiff filed a motion for remand shortly thereafter. *Id.* at *5. The court denied plaintiff's motion, explaining that plaintiff's legal malpractice claim satisfied the *Grable* test. *See id.* at *6–8.

*First*, the court found that an issue of federal law was necessarily raised because the causation element of plaintiff's legal malpractice claim "require[d] [plaintiff] to demonstrate that it did not violate the federal securities laws." *Id.* at *6. Plaintiff had to make this showing to prove that defendant's incompetent advice was the cause of plaintiff's expenses "in connection with the defense of the SEC's investigation and subsequent suit." *Id.*; *see also Nazzaro v. Balber*, 2005 WL 1251785, at *5 (S.D.N.Y. May 25, 2005) (finding issues of federal law necessarily disputed where "plaintiffs' pleading compels the inference that plaintiffs intend to argue underlying claims arising from federal law in their suit for malpractice against their former counsel").

*Second*, the court found that federal issues were actually disputed because the question of whether violations of the federal securities laws occurred "present[ed] a number of hotly disputed legal issues, including what misstatements and omissions may form the basis for a claim under Section 10(b) of the Exchange Act and Section 17(a) of the Securities Act of 1933" that were the subject of pending motions in the related SEC enforcement action. *Rsrv. Mgmt.*, 2012 WL 4378058 at *6.

*Third*, the court concluded that the federal issues were substantial because of "the comprehensive federal securities regime, and the fact that Congress has granted federal courts exclusive jurisdiction over federal securities law actions." *Id.; see also id.* at *7 ("There is a strong federal interest in the adjudication of federal securities law claims in federal court because securities are regulated by a federal agency.").

*Fourth*, the court held that it could hear the case without upsetting Congress's "approved balance of federal and judicial responsibilities" because Congress entrusted federal courts with "exclusive jurisdiction over the [f]ederal securities laws," securities are regulated by a federal agency, and keeping a case like the plaintiff's in federal court was not likely to "'open the floodgates' to federal courts." *Id.* at *7 (quoting *New York City Health & Hosps. Corp. v. WellCare of New York, Inc.*, 769 F. Supp. 2d 250, 259 (S.D.N.Y. 2011)).

Armijo's claims for professional negligence, negligent misrepresentation, aiding and abetting fraud, and equitable indemnity make his case removable for the same reasons.  His claims necessarily raise federal issues:  1) to establish a breach of duty, Armijo must show that Defendants' legal advice regarding the federal securities laws was incorrect; and 2) to establish causation, Armijo must show that he actually violated the federal securities laws and that he would not have violated them without Defendants' allegedly negligent legal advice. *See Giacometti v. Aulla, LLC*, 187 Cal. App. 4th 1133, 1137 (2010) (causation is an element of professional negligence); *Quicken Mortgage Corp. v. Bank of America, N.A.*, 2022 WL 189816,

NOTICE OF REMOVAL                                                          CASE NO.

at *8 (Cal. Ct. App. Jan. 21, 2022) (causation is an element of negligent misrepresentation); *Mosier v. Stonefield Josephson, Inc.*, 2013 WL 4859635, at *3 (C.D. Cal. July 30, 2013) (causation is an element of an aiding and abetting claim), *aff'd*, 815 F.3d 1161 (9th Cir. 2016); *C.W. Howe Partners Inc. v. Mooradian*, 43 Cal. App. 5th 688, 700 (2019) (equitable indemnity requires "a showing of fault on the part of the indemnitor" and "resulting damages").

Armijo recognizes that to prevail on these claims, he must show that "but for" Defendants' alleged legal advice, he would not have violated federal securities laws and sustained the damages (like the cost of defending against the SEC enforcement action) that he now seeks. *See* Ex. A (Compl. ¶ 97) (Armijo "would not have become an investor or sales agent of EquiAlt Securities but for the representations, legal advice, and assurance of Defendants" and would not have suffered damages); *id.* ¶ 105 ("Plaintiff's reliance on Defendants' misrepresentations was a substantial factor in causing Plaintiff's harm" and caused Armijo "millions of dollars in damages"); *id.* ¶ 112 ("Plaintiff justifiably relied on Defendants' false representations and material omissions, was unaware of the falsity of Defendants' representations or the omitted facts, and would not have acted as a sales agent for the EquiAlt Parties, or purchased EquiAlt Securities, had he known the true facts."). Thus, to resolve Armijo's claims, a court must consider legal questions arising under the federal securities laws and determine how they apply to Armijo. *See Turbeville v. Fin. Indus. Regul. Auth.*, 874 F.3d 1268, 1276 (11th Cir. 2017) (holding plaintiff's state law claims necessarily raised federal issues where they required court to interpret rules and regulations FINRA issued pursuant to Exchange Act).

These federal issues are also actually disputed, as demonstrated in the SEC's and Armijo's cross-motions for summary judgment in the pending enforcement action. In fact, Armijo argues in his motion for summary judgment that he did not violate the Securities Act, that he does not qualify as a "broker" under the Exchange Act, and that he should not be held liable because he relied on the advice of counsel.

NOTICE OF REMOVAL                                          CASE NO.

*See* Ex. D (Armijo MSJ).  Armijo further claims the application of the federal securities laws to him violates the federal constitution.  *Id.*  The SEC opposes those arguments.

The federal issues raised in Armijo's complaint are substantial.  There are at least four "aspects of a case or an issue" that the Supreme Court has "identified" as relating to an issue's substantiality:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski v. Centerior Energy Corp.* 501 F.3d 555, 570 (6th Cir. 2007) (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006)).  Armijo's case involves several of these factors, each of which weigh in favor of removal.

Armijo's complaint implicates (and seeks to circumvent) SEC policy and federal law that bar defendants like him from seeking indemnity for judgments they incur as a result of their violations of the federal securities laws.  *See* 17 C.F.R. § 229.510 (noting the SEC's view that indemnification for violations of the Securities Act "is against public policy as expressed in the Act and is therefore unenforceable"); *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009); *Riverhead Sav. Bank*, 893 F.2d at 1116.  As noted above, Armijo seeks to have Defendants cover the cost of all judgments he must pay as a result of his federal securities law violations.  The SEC's interest in prohibiting Armijo from passing his liability off to other parties is thus directly implicated in this case.

Just as important, Armijo's case presents questions about federal law that concern an area of law over which the federal government has a particular interest.  As many courts have recognized, "the comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest." *Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 788 F.2d 1500,

NOTICE OF REMOVAL                                                                 CASE NO.

1504 (11th Cir. 1986); *see also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

And the resolution of the federal issues Armijo raises could control or affect numerous other cases.  The issues are not hypothetical and are currently disputed in ongoing proceedings in the pending federal actions against Armijo.  More broadly, consideration of Armijo's claims could also implicate the SEC's ability to deter other non-brokers who allegedly sold securities in violation of federal law.

Finally, Armijo's case can be resolved in federal court without upsetting Congress's approved balance between federal and state court jurisdiction.  As the court noted in *Reserve Management*, Congress has entrusted federal courts with the primary responsibility to interpret and apply the federal securities laws, 2012 WL 4378058 at *7, and removing cases like Armijo's is unlikely to shift a significant number of cases to the federal docket.  Removal will also "ensure that a state court is not burdened with adjudicating damages claims that are already part of a pending federal . . . action."  *Handy Land & Timber, LLLP v. Transcon. Gas Pipe Line Co., LLC*, 762 F. App'x 810, 813 (11th Cir. 2019).

Armijo's "dependence on federal law permeates [his] allegations such that [his] claims cannot be adjudicated without reliance on and explication of federal law." *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020).  The federal law questions that his complaint raise require "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.  Armijo's claims thus provide for federal jurisdiction.[6]

---

[6] To the extent not otherwise provided for above, supplemental jurisdiction exists as to all other claims as set forth in the Complaint, pursuant to 28 U.S.C. § 1367.  A court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a). This standard is satisfied here because Armijo's claims are so related to claims as to which there is federal question jurisdiction that they form parts of the same case or controversy.  In addition, Armijo's claims do not raise novel or complex issues of state law and do not substantially predominate over the federal claims.  *See* 28 U.S.C. § 1367(c).

NOTICE OF REMOVAL                                                    CASE NO.

The court with the greatest knowledge and investment in this matter is the Middle District of Florida, and it is to that court that Defendants ask that this matter be transferred. If Armijo were to seek remand, the judges of that court have years of experience on these matters to readily decide the remand motion.

WHEREFORE, Defendants hereby remove this action from the Superior Court of the State of California in and for the County of Los Angeles, to the United States District Court for the Central District of California.

NOTICE OF REMOVAL                                               CASE NO.

1

2    Dated: December 6, 2022                Respectfully submitted,
                                            SWANSON & MCNAMARA, LLP
3

4                                           By:  /s/ *Edward W. Swanson*
                                                 Edward W. Swanson
5                                                Britt Evangelist
                                            *Attorneys for Defendant Paul R.*
6                                           *Wassgren*

7

8    Dated: December 6, 2022                WILLIAMS & CONNOLLY LLP

9
                                            By:  */s/ Joseph Bayerl*
10                                               John K. Villa
                                                 Vidya Atre Mirmira
11                                               Joseph Bayerl
                                             *Attorneys for Defendant DLA Piper LLP*
12                                           *(US)*

13
     Dated: December 6, 2022                KLINEDINST PC
14

15                                          By:  /s/ *Heather L. Rosing*
                                                 Heather L. Rosing
16                                               Daniel S. Agle
                                                 Amara S. Barbara
17                                          *Attorneys for Defendant DLA Piper LLP*
                                            *(US)*
18

19
     Dated: December 6, 2022                JENNER & BLOCK, LLP
20

21                                          By:  /s/ *Michael P. McNamara*
                                                 Michael P. McNamara
22                                               Effiong Dampha
                                            *Attorneys for Defendant Fox Rothschild*
23                                          *LLP*

24

25

26   21904466.1

27

28

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2), I hereby attest that all signatories listed above, and on whoes behalf this filing is submitted, concur in the filings's content and have authorized the filing.

Dated: December 6, 2022

KLINEDINST PC

By:  /s/ *Heather L. Rosing*
       Heather L. Rosing
       Daniel S. Agle
       Amara S. Barbara
       *Attorneys for Defendant DLA Piper LLP (US)*

22